**FILED**

May 12 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

1  DAVID L. ANDERSON (CABN 149604)
   Acting United States Attorney

2

3  HALLIE HOFFMAN (CABN 210020)
   Chief, Criminal Division

4  KATHERINE M. LLOYD-LOVETT (CABN 276256)
   Assistant United States Attorneys

5

6     1301 Clay Street, Suite 340S
      Oakland, California 94612

7     Telephone: (510) 637-3680
      FAX: (510) 637-3724

8     Katherine.lloyd-lovett@usdoj.gov

9  Attorneys for United States of America

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                    OAKLAND DIVISION

13

   IN THE MATTER OF:                          )  CASE NO. 4-20-70150 KAW.
14                                             )
   SEARCH OF A PHYSICAL LOCATION FOR          )  APPLICATION AND [XXXXXX] ORDER TO
15 INVESTIGATION OF 21 U.S.C. § 846 AND        )  UNSEAL SEARCH WARRANTS
   OTHER OFFENSES                              )
16                                             )
                                               )
17 _____ )

18         The United States respectfully requests that the Search Warrant and Application issued under

19 Case No. 4-20-70150 KAW (attached hereto as Exhibit A), along with any associated documents and

20 the case docket, be unsealed. The warrant has been executed and the grounds for filing the documents

21 under seal described in the affidavit no longer apply. While the sealing order accompanying the warrant

22 provides for disclosure of the warrant in discovery absent an additional order from the Court, the

23 defendant in a related criminal case has requested that his attorney obtain certified copies of the warrant

24 so that he may be satisfied that the warrant in fact exists and was issued by the Court. The government

25 understands that this will not be possible without unsealing the warrant, associated documents, and the

26 docket itself. Accordingly, because it is no longer necessary for this warrant to remain under seal and

27 because the defense has requested the ability to obtain certified copies of the original warrant, the

28 government respectfully requests that the warrant be unsealed.

APPLICATION AND [PROPOSED] ORDER
4-20-70150 KAW

1 | Dated: May 12, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

*Katherine M. Lloyd-Lovett*

KATHERINE M. LLOYD-LOVETT
Assistant United States Attorney

## [XXXXXX] ORDER

Good cause appearing therefor, it is hereby ORDERED that the Search Warrant issued under Case No. 4-20-70150 KAW, along with the Application, any associated documents, and the case docket be unsealed.

IT IS SO ORDERED.

Dated: ___May 12, 2020_____

KANDIS A. WESTMORE
United States Magistrate Judge

APPLICATION AND [PROPOSED] ORDER
4-20-70150 KAW                    2

# Exhibit A

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.  4-20-70150 |
| A PHYSICAL LOCATION FOR INVESTIGATION OF 21 | ) | |
| U.S.C. § 846 AND OTHER OFFENSES | ) | |
| | ) | KAW |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Northern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

1354 Springhill Drive, Pittsburg, California, 94565, as described more particularly in Attachment A, incorporated herein by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

The items identified in Attachment B, incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before ___2/21/20___ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ The Honorable Kandis A. Westmore _____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   2/7/20  3:46 p.m.                        _____
                                                                                              *Judge's signature*

City and state:    Oakland, CA _____        Hon. Kandis A. Westmore, U.S. Magistrate Judge
                                                                                          *Printed name and title*

## ATTACHMENT A

<u>SUBJECT RESIDENCE</u>:    1354 Springhill Drive, Pittsburg, California 94565, a single story, single family home with a white garage door on the left side of the house and a black front door.   The numbers "1354" are affixed in a cascading pattern on an exterior wall located on a wall to the right of the front door.



## END OF ATTACHMENT A

**Attachment B**
**Property To Be Seized and Searched**

Any items that constitute evidence of a crime; contraband, fruits of crime,

or other items illegally possessed; and property designed for use, intended for use,

or used in committing a crime; specifically, violations of Title 21, United States

Code, Sections 841 and 846 and Title 18, United States Code, Section 1956,

including:

1. Marijuana and other controlled substances;

2. Any materials or records relating to the ordering, transportation,
   possession, distribution, or sale of controlled substances, including any
   packaging materials, invoices, bills of lading, and receipts.

3. Any books and records that include the names, addresses, telephone
   numbers, email addresses of narcotics purchasers or suppliers, which
   would reveal the identities of confederates in narcotics trafficking;

4. Bulk currency used to purchase controlled substances or that reflect the
   proceeds of sales of controlled substances;

5. Firearms and other dangerous weapons, bulletproof vests, and body armor;

6. Drug paraphernalia including glassine bags, scales, stamps, and cutting
   agents;

7. Financial records, including bank records, deposit slips, vehicle and property titles and mortgages/leases, including indicia of occupancy or ownership;

8. Electronic equipment, including cellular telephones, smartphones, computers (desktop, laptop, iPads, tablets), used to generate, transfer, count, record, or store the information or transactions as described in the affidavit. Agents will seek additional warrants to search any such devices seized.

## END OF ATTACHMENT B

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:

_____
*Executing officer's signature*

_____
*Printed name and title*

AO 106 (Rev. 04/10) Application for a Search Warrant

**ORIGINAL FILED**

## UNITED STATES DISTRICT COURT
for the
Northern District of California

FEB 10 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

A PHYSICAL LOCATION FOR INVESTIGATION OF 21 U.S.C. § 846 AND OTHER OFFENSES

Case No. **4-20-70150**

**KAW**

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
1354 Springhill Drive, Pittsburg, California, 94565, as described more particularly in Attachment A, incorporated herein by reference,

located in the _____ Northern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:
The items identified in Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to distribute controlled substances |
| 21 U.S.C. § 841 | Possession with intent to distribute controlled substances |
| 18 U.S.C. § 1956 | Money laundering |

The application is based on these facts:
See attached affidavit of FBI Special Agent Steven Lee.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Approved as to form _____
AUSA K. Lloyd-Lovett

_____
*Applicant's signature*

Steven Lee, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/7/20 _____

_____
*Judge's signature*

City and state: Oakland, CA _____

Hon. Kandis A. Westmore, U.S. Magistrate Judge
*Printed name and title*

### <u>AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT</u>

Your affiant, Steven H. Lee, being duly sworn and deposed, states as follows:

### INTRODUCTION AND QUALIFICATIONS OF AFFIANT

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since September of 2015.  My first assignment was as a member of the FBI Joint Terrorism Task Force, serving on a Domestic Terrorism squad for approximately two years.  I am currently assigned to the Oakland FBI Resident Agency and work violent criminal matters, gangs, weapons, narcotics-trafficking organizations, and various other offenses in Alameda County, California.

2.      Prior to my employment with the FBI, I was a Detective with the Boulder County Sheriff's Office in Colorado, where I was assigned to the Boulder County Drug Task Force (BCDTF).  The BCDTF is a High Intensity Drug Trafficking Area (HIDTA) Task Force, comprised of local law enforcement officers who investigate any and all felony drug violations and drug-related crimes in the State of Colorado, primarily in Boulder County.  I was assigned to the BCDTF from April 2011–August 2015, and was a commissioned Police Officer in the State of Colorado since August 2005.  In addition, my training and experience as a Detective includes, but is not limited to, conducting surveillance, interview and interrogation, authoring various affidavits (arrest warrants, GPS warrants, phone tolls, ping warrants, Title III intercepts, residential search warrants, etc.), and managing the assistance of undercover agents and informants.  I also served as a SWAT Operator, Police Training Officer, Defensive Tactics Instructor, and Colorado Peace Officer Standards and Training Instructor for Confidential Informant Management and Surveillance Operations.

3.      I have worked as an undercover officer and developed contacts with drug users, drug sellers, and drug informants.  While assigned to the BCDTF, I attended a 56-hour Basic Drug Investigators course, hosted by the U.S. Drug Enforcement Administration and Rocky Mountain HIDTA Training Staff. During this training, I learned about working with and handling confidential informants, conducting surveillance operations, and managing complex drug investigations.  Additional training includes over 100 hours of coursework through the Multijurisdictional Counter Drug Task Force, to include, but not limited to Patrol Drug Investigations, Clandestine Laboratory Investigations, Conspiracy Investigations, Narcotics Investigations, Money Laundering, and Street Gangs.  As a member of the BCDTF, I was one of the primary detectives handling complex narcotics enforcement cases in Boulder County, Colorado, to include Operation El Gaucho and Operation Dos Caras, both large-scale Organized Crime and Drug Enforcement Task Force Title III investigations.  In December 2012, I earned a Master of Science degree in Organizational Leadership from Regis University, where I graduated with honors.

**PLACE TO BE SEARCHED**

4.  I make this affidavit in support of an application for a search warrant for the following place located within the Northern District of California:

> SUBJECT RESIDENCE: 1354 Springhill Drive, Pittsburg, California 94565, a single-story, single-family home with a white garage door on the left side of the house and a black front door.  The numbers "1354" are affixed in a cascading pattern on an exterior wall located on a wall to the right of the front door.  A photograph is located in Attachment A to this affidavit and incorporated herein by reference.

2

5.   Items to be seized are described in Attachment B, which is incorporated herein by reference.

## TECHNIQUES USED BY DRUG TRAFFICKERS

6.   Based on my training and experience and my participation in other investigations involving violations of the federal Controlled Substances Act and related offenses, your affiant knows the following:

a.      That drug traffickers must maintain, on hand, significant amounts of United States currency to maintain and finance their ongoing drug businesses;

b.      That it is common for drug traffickers to keep books, records, receipts, notes, ledgers, airline documents, and other papers relating to the transportation, ordering, purchase, sale, and distribution of controlled substances.  The aforementioned books, records, receipts, notes, ledgers, and documents are maintained where the drug traffickers have ready access to them;

c.      That it is common for narcotics distributors to possess contraband including marijuana, heroin, cocaine, proceeds of drug sales, and records of drug transactions in secure locations within their residences, their businesses, storage units and other places.  Such locations frequently include self-storage units over which they maintain dominion and control, for ready access and to conceal these items from law enforcement authorities;

d.      That to accomplish this concealment, drug traffickers frequently build "stash" places within their residences, their businesses, storage units, vehicles or other locations (including buried on the grounds thereof);

3

e.    That drug traffickers frequently maintain addresses or telephone numbers in books, papers, pocket telephone cards, wrist watches, and smart phone devices such as iPhones, iPads, and other electronic devices, which reflect names, addresses, and phone numbers of their associates in the drug-trafficking organization;

f.    That it is common for drug traffickers to maintain photographs and videotapes of themselves with their associates in the drug-trafficking organization, with drugs and guns, and with assets and fruits of narcotics trafficking, including significant amounts of United States currency and vehicles;

g.    That narcotics distributors commonly have in their possession, that is, on their person, in their bags, at their residences, at their business locations, or in storage units they control, firearms, including handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons. Said firearms are used to protect and secure a drug trafficker's property, including drugs, drugs paraphernalia, jewelry, books, records, and United States currency;

h.    That it is common for drug traffickers to use digital pagers, cellular/PCS phones, social media websites, residential and business telephones, and two-way radios to stay in communication with one another;

i.    That drug traffickers own and maintain facsimile machines, personal desktop and laptop computers and other similar and related devices, including monitors, printers, keyboards, disks, CD-ROMs, personal digital assistants/smart phones such as iPhones and iPads, operating manuals, and the like, that are used in the commission of criminal offenses or that contain evidence of criminal offenses. These devices and programs

allow users to manage and track their financial portfolios and generate, transfer, count, record, and store the information listed in the subparagraphs above and below;

j.     That drug traffickers possess and maintain multiple cellular phones, smart phones, and other similar devices to communicate with their suppliers and with their customers;

k.     That narcotics distributors and money launderers commonly have in their possession, that is, on their person or in their luggage, when traveling by commercial aircraft, significant amounts of drugs or U.S. currency;

l.     That drug traffickers possess and maintain at their residence or on their person papers, including "pay and owe" sheets, ledgers, and similar documents tracking their narcotics sales;

m.     That San Francisco is a known drug source city and travelers have been located at the Hartsfield Jackson Atlanta International Airport (HJAIA) carrying bulk U.S. currency believed to be drug proceeds to be used to finance additional drug transactions on commercial aircraft destined for San Francisco within the last twelve months;

n.     That drug money couriers will often vacuum seal drug proceeds in an effort to hide the odor of illegal narcotics, found on drug proceeds, from narcotics detecting canines; and

o.     That it is common for drug traffickers and money launderers to "ghost ship" bags on commercial airline flights.  In those instances, individuals will check bags on domestic U.S. commercial flights, so the bag will arrive at its intended destination, without the individual completing the flight himself.  Upon arrival at the destination baggage carousel, a co-conspirator will often retrieve the bag in furtherance of drug and money laundering efforts.

## SOURCES OF KNOWLEDGE

7.  I make this affidavit based upon personal knowledge derived from the following: information I have learned from discussions with FBI Special Agents, HSI Special Agents, Task Force Officers and written reports.

8.  The facts stated in this Affidavit are based upon information directly relayed to me by Homeland Security Investigations Special Agent Matthew DeVane, who is a primary investigator in this case. Unless otherwise noted, factual statements not based upon the personal observations of SA DeVane are based upon information received from one or more other law enforcement officers who may have either direct or hearsay knowledge of the factual statement, such knowledge having been conveyed to SA DeVane either personally or through a report that he reviewed.  Wherever in this Affidavit I state my belief, such belief is based upon my training and experience and upon the information obtained through this investigation.

## PROBABLE CAUSE

9.  On September 2, 2017, Delta Global Services (DGS) employee Bubacarr Drammeh attempted to enter HJAIA through an employee checkpoint located in Concourse F.  During an employee security screening, a security guard determined that a bag carried by Drammeh contained a significant amount of U.S. currency, later determined to be $140,270.   In an interview on the same date, Drammeh stated to an Atlanta Police Department (APD) Investigator that the money did not belong to him but was the property of Alhaji Touray, who was later identified as Alhaji Jewru Touray ("TOURAY").  Drammeh further stated that Drammeh's spouse also was involved in moving money from Atlanta, Georgia, to San Francisco, California, on behalf of TOURAY. Drammeh made an additional statement to APD

that Drammeh had heard that other people were moving bags for TOURAY, but Drammeh did not know their names.

10. In an interview with an HSI special agent on October 11, 2017, Drammeh confirmed that each time that he traveled from Atlanta, Georgia, to San Francisco, California, Drammeh was carrying bags containing currency for TOURAY. Drammeh stated that he was paid for transporting currency by checks endorsed by TOURAY, on which Drammeh would then complete the amount portion prior to depositing into his bank account.

11. Bank records from a Fidelity Bank account in the name 2 Rays Mart LLC (xxxxx3355) revealed numerous checks from the account to Bubacarr Drammeh, which were deposited subsequent to trips completed from Atlanta to San Francisco by Drammeh or his wife Matako Drammeh. Fidelity Bank records further confirmed that account xxxxx3355 was opened on June 16, 2015, by Jewru TOURAY, who used Social Security Number xxx-xx-9187.

12. Records from the Social Security Administration confirmed that Social Security Number xxx-xx-9187 is assigned to TOURAY.

13. Drammeh confirmed that on at least one occasion the U.S. currency was vacuum sealed, which as I explained above, is consistent with the manner in which drug traffickers often package drug money for transportation.

14. On December 12, 2018, at approximately 0640 hours, SA DeVane observed TOURAY and Niaja DACE[1] in the T13 Boarding Gate area at HJAIA. The two individuals

---

[1] On November 26, 2018, APD officers responded to an alleged burglary at an apartment rented by Niaja DACE at 3227 Verdant Dr. SW, Unit 1517, Atlanta, Georgia. While walking through the apartment with DACE to determine what, if anything, was stolen, officers observed an

were talking together and attempted to board the plane together, but an airline gate agent initially stopped DACE due to a ticketing issue. Eventually, TOURAY and DACE boarded United Airlines flight 1900, which was boarding at that gate and destined for San Francisco.

15. That same day, at approximately 0644 hours, members of the Hartsfield BEST Group located two checked bags at the United Airlines baggage carousel located underneath Concourse T. The bags were both checked under the name Jewru TOURAY for United Airlines Flight 1900. Agents did not observe any luggage checked under DACE's name.

16. After receiving a narcotic detecting canine alert to the presence of the odor of narcotics coming from the bags, HSI Agents obtained a federal search warrant for the bags, which led to the discovery and seizure of approximately $73,975 in U.S. currency, concealed within the bags.

17. On December 13, 2018, the day after TOURAY's bags had been seized, DACE contacted APD to report her bag stolen from a United Airlines flight on December 12, 2018, at 0600 hours, which is consistent with the flight she took with TOURAY. In the report, DACE stated that she checked her luggage for the flight and provided an aggregated loss estimate of $45,000.

18. On January 25, 2019, HSI Agents received information that Niaja DACE intended to travel onboard Southwest Airlines Flight 682 from Atlanta to Denver, Colorado. Upon arrival in Denver, DACE's travel itinerary included a connecting flight onboard Southwest Airlines flight 1881 to Reno, Nevada.

---

approximately gallon sized plastic bag of marijuana in plain view. The marijuana was seized, but no arrests were made at that time.

19. Video surveillance at HJAIA captured DACE entering the airport check-in area with a suitcase at 0513 hours. At 0518 hours, the same camera captured DACE leaving HJAIA without the suitcase.

20. That same day, at approximately 0521 hours, HSI Agents located a checked bag in the Southwest Airlines baggage sorting area located underneath Concourse T at HJAIA. The bag was checked under the name Niaja DACE, and it appeared to be the same one observed in the video footage.

21. After a narcotics canine alerted to the presence of the odor of narcotics coming from the bag, HSI Agents obtained a federal search warrant for the bag. HSI Agents discovered and seized approximately $48,770 in U.S. currency that was concealed within the bag. HSI Agents confirmed with a Southwest Airlines gate representative that the bag was checked at a kiosk at HJAIA, but DACE did not board the flight for which the bag was checked.

22. The same day, Federal Air Marshals from the Federal Air Marshal Service established surveillance at the baggage claim carousel area for Southwest Airlines flight 1881 in Reno, Nevada, the flight's destination. If HSI Agents had not searched and seized the luggage checked by DACE in Atlanta, Southwest Airlines would have delivered the bag to this carousel. An Air Marshal observed and photographed TOURAY arriving at the carousel and appearing to search for the already seized bag. TOURAY departed empty-handed.

23. On September 11, 2019, HSI agents interviewed a confidential source (CS)[2] for information about sending large quantities of U.S. currency in checked luggage. On August

---

[2] The CS is providing information in exchange for consideration on the money laundering case described in this section. The CS has no prior criminal history. HSI Agents have corroborated the information the CS has provided where possible and believe the information that the CS has provided to be credible and reliable.

10, 2018, and October 7, 2018, the CS had been identified trying to check luggage at Nashville International Airport (NIA) containing $45,600.00 and $114,990.00, respectively. The currency was seized by agents from the Drug Enforcement Administration (DEA), believing the currency to represent drug proceeds.

24. During the interview, the CS stated that the money seized from him at NIA belonged to TOURAY, who the CS said was involved in marijuana trafficking between suburban San Francisco and Atlanta, Georgia. The CS also said that the CS had driven loads of marijuana belonging to TOURAY from California to Georgia, including as recently as two days prior to the interview. The CS identified the SUBJECT RESIDENCE as a location where the CS and TOURAY had previously vacuum sealed bags of marijuana together that were destined for Atlanta.

25. On February 5, 2020, agents with the Federal Bureau of Investigation (FBI) conducted a trash pull at the SUBJECT RESIDENCE. Items discarded from the SUBJECT RESIDENCE included numerous vacuum seal bags containing marijuana residue, receipts with TOURAY's name, an airbag recall notice with DACE's name, and 16 empty aerosol cans used to dispense expandable foam. According to FBI agents, expandable foam is often used by drug traffickers to package narcotics in the hope that the narcotics will be harder to detect.

26. A commercial database query on February 7, 2020, revealed a household listing record for TOURAY at the SUBJECT RESIDENCE. The same query revealed a utility listing for the SUBJECT RESIDENCE in DACE's name.

## **CONCLUSION**

27. Based on the investigation to date, your affiant respectfully submits that there is probable cause to believe that the SUBJECT RESIDENCE contains evidence of a crime; contraband, fruits of crime, or other items illegally possessed; and property designed for use, intended for use, or used in committing a crime; specifically, violations of Title 21, United States Code, Sections 841 and 846 and Title 18, United States Code, Sections 1956, as set forth in Attachment B, which is incorporated herein by reference.

//

//

//

//

//

//

//

//

//

//

//

//

//

11

## **SEALING REQUEST**

28. I further request that the search warrant, supporting application, affidavit (and any attachments thereto), and associated pleadings be filed under seal until further order of the Court so as to avoid premature disclosure of the ongoing undercover investigation, which would jeopardize the investigation, guard against the flight of the target subjects, avoid the destruction of evidence, avoid the intimidation of witnesses, and better ensure the safety of agents, officers, and others, except that working copies may be served on Special Agents and other investigative and law enforcement officers of HSI, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the Court's Order.

Respectfully submitted,

_____
Steven H. Lee
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on February 7 _____, 2020

_____
Honorable KANDIS A. WESTMORE
UNITED STATES MAGISTRATE JUDGE

12

## ATTACHMENT A

SUBJECT RESIDENCE:   1354 Springhill Drive, Pittsburg, California 94565, a single story, single family home with a white garage door on the left side of the house and a black front door.  The numbers "1354" are affixed in a cascading pattern on an exterior wall located on a wall to the right of the front door.



## END OF ATTACHMENT A

## Attachment B
## Property To Be Seized and Searched

Any items that constitute evidence of a crime; contraband, fruits of crime, or other items illegally possessed; and property designed for use, intended for use, or used in committing a crime; specifically, violations of Title 21, United States Code, Sections 841 and 846 and Title 18, United States Code, Section 1956, including:

1. Marijuana and other controlled substances;

2. Any materials or records relating to the ordering, transportation, possession, distribution, or sale of controlled substances, including any packaging materials, invoices, bills of lading, and receipts.

3. Any books and records that include the names, addresses, telephone numbers, email addresses of narcotics purchasers or suppliers, which would reveal the identities of confederates in narcotics trafficking;

4. Bulk currency used to purchase controlled substances or that reflect the proceeds of sales of controlled substances;

5. Firearms and other dangerous weapons, bulletproof vests, and body armor;

6. Drug paraphernalia including glassine bags, scales, stamps, and cutting agents;

7. Financial records, including bank records, deposit slips, vehicle and property titles and mortgages/leases, including indicia of occupancy or ownership;

8. Electronic equipment, including cellular telephones, smartphones, computers (desktop, laptop, iPads, tablets), used to generate, transfer, count, record, or store the information or transactions as described in the affidavit. Agents will seek additional warrants to search any such devices seized.

### END OF ATTACHMENT B

1    DAVID L. ANDERSON (CABN 149604)
     United States Attorney

2

3    HALLIE HOFFMAN (CABN 210020)
     Chief, Criminal Division

4

5    KATHERINE M. LLOYD-LOVETT (CABN 276256)
     Assistant United States Attorney

6       1301 Clay Street, Suite 340S
      Oakland, California 94612
7       Telephone: (510) 637-3680
      FAX: (510) 637-3724
8       katherine.lloyd-lovett@usdoj.gov

9

   Attorneys for United States of America

10

11             UNITED STATES DISTRICT COURT

            NORTHERN DISTRICT OF CALIFORNIA

12

13                OAKLAND DIVISION

14    APPLICATION BY THE UNITED STATES    )   NO.   **4-20-70150**
     FOR A SEARCH WARRANT FOR A           )
15    PHYSICAL LOCATION FOR               )   MOTION TO SEAL SEARCH WARRANT,
     INVESTIGATION OF 21 U.S.C. § 846 AND   )   APPLICATION FOR SEARCH WARRANT,
16    OTHER OFFENSES                 )   AFFIDAVIT AND EXHIBITS THERETO, AND
                                  )   MOTION TO SEAL AND ORDER ON MOTION
17                                   )   TO SEAL
                                  )
18                                   )

19                                   )

20                                   )

21

22    //

23    //

24    //

25    //

26    //

27    //

28

   MOTION TO SEAL

ORIGINAL FILED

FEB 10 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

1      The United States respectfully moves the Court to seal this Motion, any Order ruling on this

2 Motion, the Search Warrant, the Application for the Search Warrant, and the Affidavit and exhibits

3 thereto.  As grounds, the United States represents that those documents be sealed to avoid prematurely

4 revealing an ongoing undercover investigation, guard against the flight of subjects, avoid the

5 destruction of evidence, and better ensure the safety of agents and others.

6      The United States also requests that, notwithstanding any sealing order, the Clerk of Court be

7 required to give copies of the sealed documents to employees of the United States Attorney's Office,

8 and that they be permitted to serve working copies on special agents and other investigative and law

9 enforcement officers of the Federal Bureau of Investigation, and other investigative and law

10 enforcement officers, federally deputized state and local law enforcement officers, other government

11 and contract personnel acting under the supervision of such investigative or law enforcement officers,

12 as necessary to effectuate the Court's Order.

13      Lastly, the government asks that nothing in the Court's Order shall prevent the United States

14 Attorney's Office from subsequently producing the Motion, any Order ruling on this Motion, the

15 Search Warrant, the Application for the Search Warrant, and the Affidavit and exhibits thereto to

16 criminal defense counsel without further order of the Court should the government determine that this

17 application is subject to its discovery obligations in connection with any criminal proceedings arising

18 from the subject investigation.

19

20 DATED: February 7, 2020

Respectfully submitted,

21

DAVID L. ANDERSON
United States Attorney

22

23

24 KATHERINE M. LLOYD-LOVETT
Assistant United States Attorney

25

26

27

28

MOTION TO SEAL

2

1    DAVID L. ANDERSON (CABN 149604)
     United States Attorney

2

3    HALLIE HOFFMAN (CABN 210020)
     Chief, Criminal Division

4

   KATHERINE M. LLOYD-LOVETT (CABN 276256)

5    Assistant United States Attorney

6       1301 Clay Street, Suite 340S
      Oakland, California 94612

7       Telephone: (510) 637-3680
      FAX: (510) 637-3724

8       katherine.lloyd-lovett@usdoj.gov

9

   Attorneys for United States of America

10

              UNITED STATES DISTRICT COURT

11

            NORTHERN DISTRICT OF CALIFORNIA

12

                OAKLAND DIVISION

13

14   APPLICATION BY THE UNITED STATES    )   NO.    **4-20-70150**
    FOR A SEARCH WARRANT FOR A            )

15   PHYSICAL LOCATION FOR                  )

16   INVESTIGATION OF 21 U.S.C. § 846 AND   )   [PROPOSED] ORDER SEALING SEARCH
    OTHER OFFENSES                     )   WARRANT, APPLICATION FOR SEARCH

17                                       )   WARRANT, AFFIDAVIT AND EXHIBITS
                                      )   THERETO, AND MOTION TO SEAL AND

18                                         )   ORDER ON MOTION TO SEAL

19                                         )

20   ––––––––––––––––––––––––––––––––––– )                                                                                                                                  

21

22        FOR GOOD CAUSE SHOWN, it is hereby ordered that the Motion to Seal, this Order,

23   the Search Warrant, the Application for a Search Warrant, and the Affidavit and exhibits thereto

24   be filed under seal until further order of this Court. Endorsed, filed copies shall be provided to

25   the United States Attorney's Office, and they shall be permitted to serve working copies on

26   Special Agents of the Federal Bureau of Investigation, and other investigative and law

27

28   SEALING ORDER

                                3

ORIGINAL FILED

FEB 10 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

KAW

1   enforcement officers, federally deputized state and local law enforcement officers, other

2   government and contract personnel acting under the supervision of such investigative or law

3   enforcement officers, as necessary to effectuate the Court's Order.

4       IT IS FURTHER ORDERED that the United States Attorney's Office may produce the

5   Motion to Seal, this Order, the Search Warrant, the Application for the Search Warrant, and the

6   Affidavit and exhibits thereto, to criminal defense counsel without further order of the Court

7   should the government determine that these pleadings are subject to its discovery obligations in

8   connection with any criminal proceedings arising from the subject investigation.

9       IT IS SO ORDERED.

10

11   Dated: February ___7___, 2020

                                          

12                   HONORABLE KANDIS A. WESTMORE
                United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   SEALING ORDER

                                         4